UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY MELLS

      Plaintiff,

v.

                                               Case No.:

ERIK K. SHINSEKI, as SECRETARY OF THE
DEPARTMENT OF VETERANS AFFAIRS,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF REQUESTED

Plaintiff, Mary Mells, complains of Defendant, Eric K. Shinseki, as Secretary of the Department of Veterans Affairs as follows:

## JURISDICTION

1.     This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. 2000e-16.

2.     Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended, including having exhausted or being excused of any required administrative remedies.

## PARTIES

3.     C.W. Bill Young Department of Veterans Affairs Medical Center (the "VAMC") is a Veterans Administration ("VA") hospital and medical center with related services located in Bay Pines, Florida.

4.     The VAMC is broken down into various services provided for veterans. At all material times, Kristine Brown ("Brown"), whose race is Caucasian, is an Associate Director,

GS-15 (served as Interim Director from April 1, 2011 through May 20, 2012). Brown was the selecting official and Plaintiff's supervisor. At all material times, Rachelle Seybold ("Seybold") whose race is Caucasian, was an HR Specialist, GS-201-12 for Recruitment and Placement. Debra Bailey ("Bailey") whose race is Caucasian, who served as one of the four panel members of the selection committee and who also served as the chief of that selection committee, is a Health Systems Specialist, GS-13, Executive Office. At all material times, Jason Waldrop ("Waldrop"), whose race is Caucasian and who served as one of the four panel members for the selection committee, was Chief of the Business Office Service at the VAMC. At all material times, Faith Belcher ("Belcher"), whose race is Caucasian and who served as one of the four panel member of the selection committee, was a Health Systems Specialist, GS-13, Tampa VAMC. At all material times, Diane Johnstone ("Johnstone"), whose race is Caucasian and who served as one of the four panel member of the selection committee, was Chief Nurse Education, Nurse IV Title 38, Nursing Service, at the VAMC.

5.     Each of the employees at the VAMC as described herein was employed by the Defendant and was acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein. Each of the employees was there during the relevant times of this complaint.

6.     At all material times, Plaintiff, whose race is Black (African – American) was and is a GS-11 Patient Representative, Director, has served the past twelve plus years at the VAMC in this position. She has worked for more than 15 years at the VAMC.

7.     On June 6, 2012, Plaintiff made first contact and had her first interview with the Department of Veterans Affairs Office of Resolution Management ("ORM"). On June 29, 2012, ORM sent her the Notice of Right to file her formal EEO complaint. She received it on July 2,

2

2012.  On July 3, 2012, she filed her formal EEO complaint which became Agency Case No. 2001-0317-2012101281, EEO No. 510-20132-00154X.  More than 360 days have passed since the filing date of the formal complaint, thus satisfying the jurisdictional requirements of 42 U.S.C. § 2000e-16(c).

8.      Plaintiff has satisfied all conditions precedent to filing of this suit or she has been prevented by the Defendant from satisfying such conditions precedent, or she is excused under the law from satisfying any other conditions.

## GENERAL ALLEGATIONS

### Race Discrimination and Disparate Treatment

9.      Plaintiff has been subjected to disparate treatment and discrimination based upon race (Black African-American) when, on April 24, 2012, she was notified that she was referred, but not selected, for the position of Consumer Affairs Specialist, GS-0301-12, under Vacancy Announcement No. NY-RNS5581RI at the VAMC.  The Selectee chosen for the position is not black (African-American).

10.      In the twelve years Plaintiff has worked for the Patient Advocate Office and as the Senior Patient Advocate, she has assumed the duties of the Consumer Affairs Specialist on numerous occasions.  Plaintiff has had outstanding performance appraisals for her 12 years in the Patient Advocate Office.

11.      Plaintiff has availed herself of all opportunities possible in order to gain more knowledge and to enhance her personal and professional growth.

12.      Plaintiff has worked with all services in the Health Care system at the VAMC.  A review of performance appraisal program established that she has worked in an outstanding manner in all the primary areas demanded of the Consumer Affairs Specialist in the Vacancy

Announcement. She has served as a VISN C.A.R.E. Facilitator responsible to provide customer service training to staff in order to meet the VISN strategic plan of delivering Patient Centered Care to veterans. She is and has been a mentor and facilitator for the Leadership VAMC and the PRIDE Leadership programs. Plaintiff is a certified Mediator and VA Certified Neutral for VISN 8. She served as the Women's Program Manager from 2004-2012. She is currently the Chairperson for the EEO Diversity Leadership Council at the VAMC. Plaintiff serves on a multitude of committees within the Healthcare System, some of which are: Disruptive Behavior Committee, Primary Care Stakeholders, Inpatient Stakeholder Group, VPM (Violence Prevention Management), Women Veteran Health Committee, Patient Centered Care Subcommittee, Service-Level Investigator for the facility's inventory management program.

13.     Plaintiff interacts daily with the congressional liaisons as they work together to assist veterans. Her performance has been rated outstanding.

14.     Plaintiff has the knowledge, skills, and on-the-job training necessary to perform this job and hold the position of Consumer Affairs Specialist. She has been the back-up for this position over the past twelve years when the former Consumer Affairs Specialist was on leave, travel or ill. She has maintained a smooth flow of the Patient Advocate Office assuring that all required reports, meetings, team meetings, patient care concerns, etc. were addressed seamlessly and without direct supervision. She has never been approached by the former Consumer Affairs Specialist or Brown with information or statements that she had deficiencies that needed improvement in order for her to advance to the next level. Plaintiff has never been approached by any member of management to say anything other than "good job". But when the time arises for advancement, she was denied that opportunity.

15. Plaintiff has never been offered the opportunity to attend supervisory training to enhance her supervisory skills. There is no other basis but race.

16. In October, 2011, the Consumer Affairs Specialist, Ms. DeFalco, announced she was leaving.

17. When the Consumer Affairs Specialist actually left, Brown made a decision to assign Bailey as Interim Consumer Affairs Specialist/Advocate Supervisor, denying Plaintiff that opportunity even after her many years of experience and as acting in the role in the absence of Ms. DeFalco. Brown had never met with Plaintiff to discuss this or her other decisions.

18. Brown's actions made it clear that she did not want Plaintiff to perform as Acting/Interim Consumer Affairs Specialist/Advocate Supervisor. All performance appraisals during Plaintiff's tenure at the VAMC have been outstanding. This decision discriminated against her for no other reason than race. Bailey remained the acting Consumer Affairs Specialist/Supervisor from October 22, 2011 until June 4, 2012. Even though she was the acting or interim Supervisor, Bailey has only been to the Advocate Office three times from October 22, 2011 through June 4, 2012. All issues throughout the hospital setting in regards to Patient Advocacy were still handled by Plaintiff.

19. Brown assigned a Health System Specialist (Bailey) to a supervisory position, going against the Office of Personnel Management (OPM) Position Classification.

20. A Health System Specialist cannot be assigned supervisory duties and cannot be "supervisory."

21. The hiring authority, Kris Brown, put together the interview panel without advisement from Human Resources. There is no one of Plaintiff's race or color on the interview panel. The selection committee panel members, who were all white, were Bailey, the chief of

the selection committee, Waldrop, Belcher and Johnstone.   Everyone on the panel worked directly for Brown and could have been swayed in the way that they scored each applicant.

22.    Belcher sent out an email on February 17, 2012 with available dates for an interview with the Consumer Affairs Specialist, GS-301-12 position, under Vacancy Announcement No. NY-RNS5581RI.   Plaintiff responded to that email on the same date with a first and second choice.  Her choices were February 28, 2012 at 2:00 p.m. and February 28, 2012 at 3:00 p.m.   She never received a confirmation email on the interview dates.  Ms. Belcher's response to Plaintiff was "your interview is today, I sent out emails to everyone, did you get your email?"  Plaintiff told her "no" and that she would not be doing her interview as she did not get prior notice.  Plaintiff was never notified of the date and time so she said she would prefer to reschedule.  Belcher told Plaintiff that she would have to get back to her.  Plaintiff received an email from Belcher with a new interview date of March 5, 2012 at 2:00 p.m.  Plaintiff believed that given the unusual things that happened in this selection process that the above sequence of events was part of an attempt to have her miss the scheduled interview and be eliminated from the selection process.  The Selectee was selected by Brown.  The Selectee is not black, African-American.

23.    Bailey was the leader of the panel.  She also concluded that the Selectee did not have a lot of experience in patient advocacy and had no experience working in the hospital/outpatient setting.  Nevertheless, two of the other three panel members credited him with a full five (5) points (the maximum) on that same issue and a third gave him 3 points. Those fundamental inconsistencies were never discussed.

24.    This level of experience was material in two ways.  Without those points, he would not have been selected for an interview because he would not have been among the top

candidates.  Candidates needed 60% to 70% of total possible application points (96) to be interviewed.  He received 69, but without those thirteen (13) points he would be well below 60%.  Moreover, it directly affects his qualifications to do the job.  If one reviews the job description, it is clear that the Consumer Affairs Specialist is primarily responsible for overseeing patient advocacy in the hospital setting.  In fact, the Selectee has had significant problems with the job since his selection because of this lack of experience.

25.  Giving the Selectee credit for an area that he does not have experience allowed for a biased and unjustifiable scoring process.  This amounted to a substantive misrepresentation of his qualifications.  The Selectee was given thirteen (13) points for having "worked in a hospital/outpatient setting" when all of his experience is in outreach.  Neither the panel lead nor the selecting official corrected this.

26.  When Plaintiff met with Bailey to discuss Kris Brown's decision on the Selectee she was told that he was a retired colonel and that he comes from VISN 17.  Bailey then asked, "Are you okay with that?"  Plaintiff told Bailey that it didn't look like she had much choice.  Plaintiff asked why Brown didn't meet with her to explain the decision and Bailey said, "Well, she asked me to meet you."  She placed his resume in front of Plaintiff which consisted of only one page.  Plaintiff glanced at the resume but was taken aback as there was not much there.  Bailey chuckled and said, "I know, his resume doesn't really say a whole lot about his experience, we didn't know of his qualifications until he was interviewed."  She went on to say that he was an Iraqi veteran and has been with the VA for about a year and a half.  She stated that he was mostly outreach and does not have any actual hospital experience.  Plaintiff asked when he would be starting and she stated that she was not sure of the exact day.  That concluded the meeting.

27. Bailey has admitted that Plaintiff wanted to meet with Brown and that she told Brown that Plaintiff also requested a meeting with Brown. However, Brown never met with her.

28. The qualifications that Plaintiff possess make her the significantly better candidate for this position and also include the direct patient care, full knowledge of the position and the 12 years of outstanding hands-on experience as the back-up for the position. Selectee had not worked in the key area.

29. Plaintiff has witnessed comments made by Selectee such as, "I don't know how I got this job, I've only worked Outreach."

30. Another fundamental problem with the scoring process was that Brown caused supervisory experience to obscure Plaintiff's far superior qualifications. It was made to be 20 percent or more of both the application and interview scoring. There is nothing in the job description that justifies this emphasis over the other aspects of the position. Moreover, typical questions from which managers get questions for a performance based interview (PBI) on this position do not even ask about such experience. However, in this case, it was made 20 percent of the PBI interview points. This was consistent with Brown's decision denying Plaintiff the opportunity to be the acting Consumer Affairs Specialist. By doing so, Brown denied her the opportunity to put down supervisory experience. Brown created a scoring system which was slanted against Plaintiff.

31. The Selectee knows nothing about the inner workings of a Patient Advocate office. He has asked questions and then argues with Plaintiff and others about the answers. Everything is a debate or a fight. Plaintiff is taken aback by the fact that she was told that the Selectee had "more supervisory experience" than she, but there is nothing in the job description that puts great demand on supervision with the exception of the comment "managing two patient

service representative assistants." In any event, Plaintiff feels that she has not been treated fairly because the supervisory demands pale in relationship to the other aspects and are such she could easily have done them.

32.     Plaintiff has knowledge of the system-wide patient advocate office roles and responsibilities.  She has a broad knowledge of healthcare operations to include veteran eligibility criteria as she worked in the Eligibility Unit prior to joining the Patient Advocate Office and continues to work closely with them on a daily basis.  She is instrumental in conducting inquiries in order to resolve problems and expedite services necessary to provide patient centered care to veterans.

33.     Plaintiff has maintained effective relationships with external stakeholders such as the Congressional liaisons, community groups and service organizations.

34.     Plaintiff has not been afforded the opportunity to advance in a position she has been doing for over 12 years in an outstanding manner.  She appended an appraisal to her application.   She also discussed her twelve years of outstanding ratings during the interview process.

35.     The ORM investigator asked for all the positions Brown selected and the information was provided.  This information was only provided for the last 2 years.  Brown has not selected an African-American employee for the three positions discussed.

36.     Race based complaints and discrimination complaints have been filed against Waldrop and Brown.

37.     Mathis Dudley, another employee of the VAMC, had filed a race based (Black) claim against Brown.

38.     Sabrina Patrick, another employee at the VAMC, filed a discrimination claim. Ms. Patrick was threatened with retaliation for filing a race based (Black) EEO claim. Brown was aware of that threat but never investigated it. Brown has told another employee to not consider hiring another employee because that other employee has engaged in EEO activity.

## Count I
### Race Discrimination, Disparate Treatment (Black African-American)

39.     Plaintiff sues Eric K. Shinseki, as Secretary of the Department of Veterans Affairs, for race discrimination and disparate treatment (black African-American) under Title VII.

40.     Plaintiff incorporates and realleges paragraphs 1 through 38.

41.     Plaintiff applied for and met the basic qualifications for a vacancy for Consumer Affairs Specialist, GS-301-12 position, under Vacancy Announcement No. NY-RNS5581RI.

42.     Plaintiff was rejected despite her superior qualifications.

43.     Another person who is not black (African-American) and who was not in Plaintiff's protected class (black African-American), but similarly situated as to position, grade, supervisor, and circumstance was selected for the Consumer Affairs Specialist, GS-301-12 position.

44.     The disparities of the qualifications between Plaintiff and the Selectee were of such weight and significance that no reasonable person, in the exercise of impartial judgment, would have chosen Selectee over Plaintiff.

45.     As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant due to race (black African-American).

46.     The above discriminatory actions were taken by the supervisory personnel within the VAMC in order to deprive the Plaintiff of employment and other employment action because of her race.

47.     The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

48.     The above-referenced actions have created an intolerable hostile work environment.

49.     The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

50.     The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

51.     The Defendant, through the Plaintiff's managers and supervisors, has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

52.     The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors within the VAMC that racial discrimination is an acceptable employment practice.

53.     Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff has been and continues to be denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

54.     As a result of the foregoing, Plaintiff has been damaged. Those damages include, but are not limited to, loss of pay; loss of wages, loss of back pay; loss of benefits; loss of an

amicable working environment; loss of career and professional opportunities; a lower performance appraisal; payment of attorneys' fees and legal costs; harm to her professional reputations; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count II
## (Injunctive Relief)

55.     Plaintiff sues Defendant Eric K. Shinseki, as Secretary of the Department of Veterans Affairs.

56.     Plaintiff incorporates and realleges paragraphs 1 through 38 and paragraphs 1 through 54.

57.     Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

58.     There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

59.     Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.      Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on race.

12

b.    Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 23, 2013

Respectfully submitted,

Joseph D. Magri
Florida Bar No.: 0814490
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Telephone: (813) 281-9000
Facsimile: (813) 281-2223
Email: jmagri@merklemagri.com