UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARY MELLS,**

    **Plaintiff,**

v.                                                     **Case No. 8:13-cv-3214-T-30TGW**

**ERIC K. SHINSEKI, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 17), Plaintiff's Response in Opposition (Dkt. 23), and Defendant's Reply (Dkt. 27). The Court, having considered the motion, response, reply, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted. As such, final judgment will be entered in Defendant's favor.

## BACKGROUND

Plaintiff Mary Mells is employed with the C.W. Bill Young Department of Veterans Affairs Medical Center ("VAMC") as a Patient Advocate. In 2012, Mells applied and interviewed for a position within the VAMC as a Consumer Affairs Specialist, a promotion from her current position. Mells claims that the VAMC failed to select her for the Consumer Affairs Specialist position on the basis of her race (African-American) in violation of Title VII of the Civil Rights Act of 1964.

Mells began working at the VAMC in or around 1997. Mells worked as a Patient Representative (also referred to at times in the record as Patient Advocate) since 2004. The Patient Advocate Office is staffed by two Patient Representatives who are supervised by the Consumer Affairs Specialist. Patty DeFalco was the Consumer Affairs Specialist from the time Mells began in the Patient Advocate Office until 2011. It is undisputed in the record that Mells had outstanding performance appraisals during her 12 years as a Patient Advocate and that she had, on numerous occasions, assumed the duties of the Consumer Affairs Specialist when DeFalco was on leave or traveling.

In October 2011, DeFalco announced that she was leaving the VAMC. At the time of this announcement, Kristine Brown was the Interim Director for the VAMC. Brown decided to appoint Debra Bailey, a Health Systems Specialist in the Executive office for the VAMC, as Acting Consumer Affairs Specialist. Brown selected Bailey to serve in the interim role because Bailey was not interested in applying for the position of Consumer Affairs Specialist. Brown also did not want to select either of the two Patient Representatives (Mells or Carrie Adams, the other Patient Representative) to serve in the interim role because both of them were eligible to apply for the Consumer Affairs Specialist position and Brown did not want to create an unfair situation where one of them was acting in the interim role and also applying for the position.

Brown was the selecting official for the Consumer Affairs Specialist position. The selection process began with the formation of a selection panel. Brown chose the following individuals to serve on the selection panel: Bailey; Faith Belcher, Public Affairs Officer;

Diane Johnstone, Chief Nurse for Education; and Jason Waldrop, Chief Business Officer. Bailey was chosen as the lead person for the selection panel.

The first step of the selection process involved reviewing the applications. The application materials were distributed to the panel members along with a rating and ranking sheet. The selection panel received thirteen applications; the top five candidates, based on their application scores, were chosen to go to the second phase of the selection process, the interview.

The interview process involved an individual performance-based interview ("PBI") of the five top candidates with the selection panel. Bailey, the panel lead, selected the interview questions from a data bank of questions. The interview questions were the same for each of the candidates and they were scored on their ability to thoroughly answer each question on a scale of 1 to 5.

Mells was among the five candidates selected for an interview. After the interviews of the five candidates, the application scores and interview scores were combined. The top two candidates (based on this combined score) were referred to Brown for the final round of interviews. The two highest scoring candidates were the selectee, Arial Rodriguez, and another candidate. Mells finished fourth out of the five candidates who were interviewed. As such, her name was never referred to Brown for the final interview round.

Mells' scores and the selectee's scores were as follows. Panel lead Bailey scored Mells 19 out of 24 on the application and 17 out of 25 on the interview. According to Bailey, during the interview process, Mells did not give adequate answers that would elevate her to

running the program. Bailey rated the selectee 3 out of 24 on the application and 20 out of 25 on the interview. According to Bailey, while the selectee's application did not give her the impression that he had a lot of experience with patient advocacy, the selectee expanded on his current role during his interview.

Panel member Belcher scored Mells 19 out of 24 on the application package and 17 out of 25 on the interview. Belcher scored the selectee 24 out of 24 on the application and 21 out of 25 on the interview. According to Belcher, she scored the selectee higher than Mells in four out of five questions that were asked during the interview. In her opinion, the selectee provided more thorough and complete responses to the questions. On two of the questions, Belcher thought Mells did not provide a specific example to illustrate her skills in those areas, whereas on the same two questions, the selectee provided very specific examples that illustrated his skills. Belcher felt the selectee was a better fit for the VAMC and performed better during the interview.

Panel member Waldrop scored Mells 19 out of 24 on the application package and 16 out of 25 on the interview. He gave the selectee an application score of 18 and an interview score of 19. According to Waldrop, the selectee had greater experience leading/supervising people and Mells provided limited information about any supervisory experience.

Panel member Johnstone scored Mells 19 out of 24 on the application package and 18 out of 25 on the interview. She gave the selectee an application score of 24 and an interview score of 21. According to Johnstone, while Mells displayed a good ability to

perform her current Patient Advocate position, she was not the top person to select for the supervisor role as a Consumer Affairs Specialist.

In sum, the record is undisputed that Mells received the second lowest score of the interview scores. Specifically, Mells' interview score was 68; the other scores were 54 (the lowest score); 76; 77; and 81 (the selectee's score). It is also undisputed that the panel members were very impressed with the selectee's performance during the interview phase.

As it relates to the interview panel, Mells admitted that she does not claim that the panel members discriminated against her based on her race.

Mells claims that Brown discriminated against her based on her race when Brown did not select her for the Consumer Affairs Specialist position. In her deposition, Mells could not point to any evidence suggesting or establishing that Brown had any influence over the panel members' scores; rather, she believed in her heart that "there was a possibility that those panel members were swayed by [Brown]." (Dkt. 17-1 at 210:17-23).

During her deposition, Mells admitted that the Consumer Affairs Specialist position was a supervisory position. Mells also admitted that her current position as Patient Advocate was not a supervisory position.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**I.    Mells' Failure to Promote Claim under the *McDonnell Douglas* Framework**

A plaintiff may establish a prima facie case of discrimination through direct or circumstantial evidence. *See Jackson v. Rooms To Go, Inc.*, 806-CV-01596-T-24EAJ, 2008 WL 2824814, at *5 (M.D. Fla. July 21, 2008) (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). The record is clear that there is no direct evidence of race discrimination against Mells; therefore, Mells must prove her claims through the familiar *McDonnell Douglas* circumstantial evidence framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If Mells can prove a prima facie case of employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas Corp.,* 411 U.S. at 802. If the VAMC meets this burden of production, the presumption of discrimination raised by Mells' prima facie case is rebutted. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). Mells must then show that the VAMC's proffered legitimate, nondiscriminatory reason is pretextual. *See id.* Notably, a plaintiff's subjective opinion that the defendant's action was discriminatory, without supportive evidence, is insufficient to establish pretext to avoid summary judgment. *See Woodbury v. Sears, Roebuck & Co.*, 901 F. Supp. 1560, 1565 (M.D. Fla. 1995) (citing *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1985)).

As an initial matter, the parties dispute the elements required for a plaintiff to establish a prima facie case for discrimination *in a failure to promote case*. This dispute is understandable because the Eleventh Circuit has issued conflicting opinions on the necessary elements. Specifically, in *Walker v. Mortham,* 158 F.3d 1177, 1186, 1193 (11th Cir.1998), the Eleventh Circuit noted that to state a prima facie failure to promote case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) the position was filled with an individual outside her protected class. In *Walker,* the Eleventh Circuit concluded that the plaintiff need not establish as part of the prima facie case that the promoted employee was equally or less qualified than the plaintiff. *See id.* at 1193. This is the test Mells advocates.

After *Walker,* a number of Eleventh Circuit decisions stated that the fourth element required the plaintiff to show that the position was filled with an individual outside the plaintiff's protected class *and* that the promoted employee was equally or less qualified than the plaintiff. *See, e.g., Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1174 (11th Cir. 2010); *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1089 (11th Cir. 2004); *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000). This is the test the VAMC advocates.

The Court sees no reason to resolve this conflict at this time because, even assuming *arguendo* that Mells satisfies her prima facie case, Mells fails to rebut the VAMC's legitimate, nondiscriminatory reasons for not promoting her to the Consumer Affairs Specialist. *See Holmes v. Alabama Bd. of Pardons & Paroles*, 591 Fed. Appx. 737, 742-43

(11th. Cir. 2014) (declining to resolve the conflict regarding the fourth element of a prima facie failure to promote claim because the plaintiff could not rebut the defendant's legitimate, nondiscriminatory reason for failing to promote him).

The record reflects that the VAMC had legitimate, nondiscriminatory reasons for not selecting Mells for the Consumer Affairs Specialist. After the interview phase for the position, Mells did not have a total score sufficient to advance to the final stage. Mells ranked fourth out of the five candidates who made it past the application phase. And only the top two candidates were referred to Brown for the final interview phase. The VAMC also produced evidence that the selectee was better qualified for the position. The interview panel concluded that the selectee interviewed much better than Mells. Each panel member made statements suggesting that Mells' interview performance was unimpressive. Specifically, the interview notes reflected that Mells' responses to the interview questions were more focused on the position she was currently in and did not address the broader set of responsibilities required of a Consumer Affairs Specialist. Further, Mells lacked experience as a supervisor.

Mells has not pointed to any evidence of pretext other than her opinions that Brown somehow orchestrated the process to prevent Mells from advancing further. For example, Mells argues that Brown should have appointed Mells, instead of Bailey, to the Consumer Affairs Specialist position during the selection phase. Mells assumes Brown did not appoint her at that time due to Mells' race. But nothing in the record supports that suspicion. Brown

explained that she did not want to create an unfair situation between Mells and the other Patient Advocate who was eligible to apply for the promotion.

Mells also testified throughout her deposition that Brown refused to have meetings with Mells. But nothing in the record supports Mells' conclusion that Brown's behavior was based on Mells' race. To the contrary, Mells admitted that prior to the selection process, she had limited interaction with Brown and Brown never did anything to suggest that she had a problem with Mells because of her race. Mells also admitted that, prior to her non-selection, she did not experience any bias against her because of her race by anyone.

Mells points to an initial mistake with the scheduling of her interview as evidence of pretext. But the record is undisputed that Belcher, not Brown, was responsible for the mix-up over the interview date. And Mells testified that she did not have any evidence, direct or otherwise, that Belcher or Brown was trying to eliminate her from the process as a result of the scheduling incident. Mells further admitted that she did not have any evidence to suggest that Brown had anything to do with the scheduling of the interviews.

Mells argues that there was no one of her "race or color" on the interview panel. But this too is insufficient to call into question the interview panel's scores of the five candidates. Indeed, Mells admitted during her deposition that she had no evidence suggesting that any of the panel members discriminated against her based on her race. Mells repeatedly stated that Brown was the individual discriminating against her. It is undisputed, however, that Brown did not select the candidate for the promotion until *after* the panel submitted the top two names for her consideration; the top two names did not include Mells.

Mells also argues in her response that Brown manipulated the scoring because she overemphasized supervisory skills during the interview process, knowing that Mells' weakness was a lack of supervisory experience. Mells also quibbles with the scores and states that Brown had some kind of sway over the panels' scoring of the candidates because they worked directly for Brown. Mells also suggests that the selectee received points in areas in which his experience was lacking. None of these accusations are supported in the record. And even if there were some issues or mistakes with the scoring of the candidates, there is nothing to suggest that racial discrimination against Mells was the real reason.

Mells then points to general "me too" evidence suggesting that Brown and other employees at the VAMC exhibited behavior tantamount to race discrimination against employees other than Mells. The majority of this evidence amounts to inadmissible double and triple hearsay. But even assuming that this evidence is admissible, it is insufficient to establish pretext here.

Generalized allegations without supporting evidence that employees were treated differently because of a protected status are insufficient to establish pretext. A plaintiff may present evidence that the *decision-maker* (i.e., Brown) made discriminatory remarks. *See Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1362 (11th Cir. 1999) (holding that a supervisor's statement that he wanted "aggressive, young men" like himself to be promoted was "highly suggestive circumstantial evidence" of age discrimination). But such remarks are probative only if they illustrate the decision-maker's state of mind at the time that he made the challenged employment decision. *See id.* (discussing pretext). Stray

remarks that are "isolated and unrelated to the challenged employment decision" are insufficient in this respect. *See Rojas v. Florida,* 285 F.3d 1339, 1342-43 (11th Cir. 2002) (supervisor's statement that another employee did not deserve her job because she was a woman was not sufficient to show pretext).

Mells' evidence of a 2010 race claim against Brown by another employee and a statement Brown made over a year after Mells' non-selection and in an unrelated context that Brown did not like blacks in leadership positions are too isolated and unrelated to establish pretext. *See Rojas,* 285 F.3d at 1342-43; *see also E.E.O.C. v. TBC Corp.,* 889 F. Supp. 2d 1368, 1381 (S.D. Ga. 2012) ("[A] discriminatory comment, taken alone, is not enough to present a question of material fact on the issue of discriminatory intent."), *aff'd on other grounds,* 532 Fed. Appx. 901 (11th Cir. 2013). This evidence also does not rebut the undisputed fact that the interview panel, not Brown, ranked Mells fourth out of the five candidates and viewed the selectee as the more qualified person for the job.

Finally, Mells spends a lot of time pointing out her superior qualifications over those of the selectee. She states that she has been forced to train the selectee because he has no idea how to perform the Consumer Affairs Specialist position. By focusing on her years of experience and her views that she was the more appropriate person for the position, Mells merely quarrels with the wisdom of the VAMC's reasons for not promoting her. In other words, Mells does not address those reasons "head on." *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000) Additionally, Mells' affidavit asserts only conclusory assertions that the selectee was less qualified, which is insufficient to show pretext. Instead,

Mells needs to present "concrete evidence in the form of specific facts" rebutting the VAMC's reasons. *See Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (explaining that "conclusory allegations without specific supporting facts have no probative value" in opposing summary judgment).

With respect to the selectee's qualifications, even if the Court were to assume that Mells was more qualified than the selectee, Mells falls woefully short of establishing that there was a disparity in qualifications "of such weight and significance" that a reasonable person could not have chosen the selectee over Mells. *See Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1206 (11th Cir. 2013). Specifically, the Eleventh Circuit has made clear that the question is not who was a better applicant, but whether the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." *Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1268 (11th Cir. 2001) (quoting *Denney v. City of Albany,* 247 F.3d 1172, 1187 (11th Cir. 2001)).

In sum, as long as the VAMC made its decision without regard to race, the wisdom of the decision cannot be second-guessed here. "A plaintiff cannot establish pretext merely by showing he or she was better qualified than the hired candidate; the plaintiff must show the hiring decision was made because of an illegal motive." *Hillemann v. Univ. of Cent. Fla.,* 167 Fed.Appx. 747, 750 (11th Cir. 2006) (citation omitted). Mells has not shown any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the VAMC's legitimate nondiscriminatory reasons for not selecting her for the Consumer Affairs

Specialist position. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997). On this record, a reasonable jury could not find that the VAMC's proffered legitimate nondiscriminatory reasons were pretextual because there is absolutely no evidence that Mells' race had anything to do with her non-selection. Accordingly, Mells' claim fails as a matter of law under the *McDonnell Douglas* framework.

**II.     Mells' Failure to Promote Claim under the *Smith* Mosaic Test**

Mells argues in her response that her failure to promote claim survives summary judgment under the mosaic test advanced in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1341 (11th Cir. 2011). In *Smith*, the Eleventh Circuit noted that regardless of the outcome of the *McDonnell Douglas* analysis, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id* at 1328. A triable issue of fact exists if, viewed in a light most favorable to the plaintiff, the record presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Silverman v. Bd. Of Educ.,* 637 F.3d 729, 734 (7th Cir. 2011)).

In *Smith*, the plaintiff could not establish a prima facie case of race discrimination under the *McDonnell Douglas* framework. But the plaintiff presented evidence that the paperwork in an investigation into racist emails explicitly identified employees by race. *Id.* at 1336-37, 1341, 1345-46. The plaintiff also presented evidence that he was fired along with all other employees that the paperwork identified as white, while no black employees under investigation were terminated. *Id.* at 1338-44.

In stark contrast, even viewing all the evidence in a light most favorable to Mells, there is no evidence of race-conscious decision-making, as there was in *Smith,* nor any other evidence substantial enough to form a convincing mosaic of circumstantial evidence of discrimination. Thus, for the reasons explained above in the context of pretext, no reasonable juror could find racial discrimination based on the evidence Mells has presented.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 17) is granted.

2. The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff.

3. After entry of final judgment, the Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on August 7, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-3214.msj17-failure-to-promote-grant.frm